## Charles Fisher *v.* Borough of South Williamsport, Appellant.

*Evidence—Municipal law —Proof of unrecorded ordinance.*

It is now well settled in Pennsylvania, that where an ordinance or resolution is actually passed by the legislative branch of a municipal corporation, and through inadvertence or mistake such resolution or ordinance is not recorded upon the minutes, the fact of the passage of such resolution or ordinance may be proved by the testimony of those present at the meeting.

*Evidence—Proof of lost contract for paving.*

Where a contract with a borough for street paving has been lost, it is competent for the plaintiff who is suing for a portion of the contract price to prove by parol the contents of the contract; that it had been drawn by the borough clerk; that it had been duly executed and left in possession of the borough; also to prove subsequent motions and resolutions made by members of councils in pursuance of the contract, accept-

ing the work, and that orders were issued for the full amount of the work done by plaintiff.

It having been proved that the contract had been "written over" another contract between the same parties which was produced and offered in evidence, and that the only changes were the streets to be paved and the price per yard to be paid, *held,* that evidence as to the price per yard and as to what streets were to be paved was properly admitted and the questions raised thereby left to the jury.

*Lost contract—Proof—Evidence—Interpretation—Instructions to jury.*

Where in proof of a lost contract for paving with a municipality it is shown that it was written over a similar contract between same parties the only variation being the streets to be paved and the price per yard, and the contract thus having been proved partly in writing, its interpretation, except as to these variations, is exclusively for the court, and it is error to leave to the consideration of the jury any subsequent variations of the written terms made by committees and other borough officers and based on alleged understandings between such committees and the plaintiff contractor as to an alleged change of the method of measurement provided for in the contract.

*Evidence—To vary a contract based on alleged subsequent understanding induced by mistake.*

Resolutions of councils providing for payment of orders, given in payment for municipal work, which are based upon a mistaken and erroneous measurement by the borough engineer and the recital of the auditor of these alleged invalid ordinances, made in ignorance of the error, are not evidence of assumption of said orders in a suit brought against the borough by the contractor and based on an alleged overmeasurement which was made in variance with the standard of measurement fixed by the terms of the contract proved in writing so far as such standard is involved.

*Evidence—Municipal contract—Extra work.*

Where a claim is made by plaintiff, a contractor, suing on a municipal contract for paving, it is error for the court to exclude an offer of evidence, on the part of the defendant, tending to show that extra work was either directly forbidden or unauthorized by the only responsible officials empowered to authorize such extra work.

*Municipal law—Paving contract—Finality of engineer's estimate.*

Where the estimate of a municipal engineer is, by the terms of a contract, to be conclusive as a basis of payment, such estimate is conclusive only on the condition that it be made in accordance with the terms of the contract, and it is not within the engineer's power to change the contract so as to allow either a greater or a less rate of compensation than was plainly agreed upon.


Argued Feb. 20, 1896. Appeal, No. 9, Feb. T., 1896, by defendant, from judgment of C. P. Lycoming Co., Sept. T.,

1895, No. 429, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Assumpsit to recover the balance alleged to be due plaintiff on a contract to pave the gutters and set curbstones in certain streets in South Williamsport borough. Verdict for plaintiff for $485.95. Before METZGER, P. J.

The facts sufficiently appear from the charge of the court and the opinion of the Superior Court.

METZGER, P. J., charged the jury as follows:

This is an action of assumpsit, brought by Charles Fisher against the borough of South Williamsport, to recover a balance which he claims was due him for curbing and paving gutters. I think the streets for which he claims this balance are the northern side of Southern avenue, Junction, Main and Second streets.

Unfortunately, there does not seem to be here before us the contract which it is alleged was entered into by the borough with Charles Fisher for the doing of this work. It appears from the testimony of the clerk of council, or the one who was clerk of council, and who wrote the alleged contract, that it was delivered to the borough authorities when he went out of office, and the present clerk has been called, and he testifies that he made diligent search, but cannot find it. A notice was also served on the part of plaintiff on the clerk of council to produce all papers, including all contracts touching the matter in controversy in this case, and that clerk states that he cannot produce that, and that he has not been able to do so, because he says he cannot find it among the papers.

We are, therefore, left without having before us the contract that was then entered into by the parties, which, if we had, might make this case very plain and very short. We are therefore compelled to rely on the next best testimony, and that is the testimony of the parties who claim to know the terms of this contract that was entered into at that time.

The testimony of the clerk of the council, or who acted as clerk at that time, is that the minutes kept by council are not complete, first, he says, either because of his carelessness, or second, because of his losing the slips of paper upon which the

minutes were actually entered, and upon which it was his habit to enter them and then afterwards transfer them to the minutes. They are lost, he says, and he cannot account for not having put them upon the minutes, except in the way I have intimated. Hence the minutes are not full, either, and we have very little upon the minutes to help us in this case, other than some few resolutions which were passed, which tend to show that the borough did accept the work done by Mr. Fisher.

Now, it appears from the evidence in this case that the highway committee were by resolution of council, which does appear upon the minutes, authorized to enter into a contract so far as regards the culvert on Southern avenue, or on the north side of Southern avenue. Further than that, I think that resolution does not go ; but it is testified to by some of the highway committee, and some of the other witnesses, that the highway committee did enter into a contract with Charles Fisher for doing this work, and that they directed the clerk of council to draw up a contract and directed him how it should be drawn, and that in pursuance of that direction he did draw a contract ; and he says that contract was presented to council when they were in session and was accepted by them, or " approved " by them, are the words I believe he uses.

Now, it is claimed the terms of that contract were thus ratified, and that Mr. Fisher was to have ninety-five cents a yard for the curbing and the other work he was to do, viz : the paving and the filling up, etc. That is what the witnesses on the part of the plaintiff testified to. They testify, too, that there was a bid by Mr. Fisher, and that bid is shown and it is identified by them, and that contract was drawn in pursuance of that bid, and that it was, as they say, for ninety-five cents a yard. And they also testify that the contract was to be the same in other respects, except in two particulars that are pointed out (and I don't remember exactly what they were any more), as a contract that had been drawn by Harvey Whitehead, the solicitor of the borough, in 1892. That contract drawn by Mr. Whitehead in 1892, which it is alleged was followed by the clerk in this case, has been offered in evidence and is before this court and jury.

[So far as there being a contract of some kind in this case is concerned, and whatever that contract is, so far as the ratifi-

cation of it is concerned, there seems to me to be very little room for dispute; because the council, as you have heard, had it read to them and approved it. They passed resolutions, in pursuance of it, in reference to paying for the work, etc., and they also had the work measured. They also had the bills presented to them, and passed upon them, and directed orders to be issued, and they did other acts, all of which taken together would probably show the fact that whatever that contract was, it was ratified by the council, although it is for you to determine whether that is the fact or not.] [7]

Now, the difficulty that arises in this case, arises by reason of the fact that we have to depend in this case on parol testimony, which is delivered here piecemeal, and the witnesses themselves may hardly have understood exactly the terms of this contract. Therefore, several questions arise about which there is some difficulty.

[It is contended, on the part of the defense, that this contract only provided for ninety-five cents a yard for the paving on the north side of Southern avenue; that, so far as the other streets were concerned, they must be governed by the contract of 1892, which had been followed by the clerk in drawing the contract between Fisher and the borough, and that according to that contract there should be only seventy-five cents a square yard paid, and they claim that that is the true interpretation of the bid that Charles Fisher made for doing this work. Well, gentlemen of the jury, it is the duty of the court, where there is a written contract, to define and explain its meaning, but in this case, where it depends partly upon parol and partly upon a writing, and where there is as much ambiguity as appears to be here, particularly in the bid that was put in by Charles Fisher, I think it is not a proper matter for the court to determine, but that the jury may determine from all the evidence in the case what the actual contract was.] [8]

Although a witness swore directly to a certain fact, yet, if the evidence in the case, the actions of council and the manner in which this business was transacted, is such as to convince you of what the agreement is, it is probably just as good testimony as the testimony of the witnesses to an actual fact. How did the council itself understand this contract to be? What was it, according to the acts of the council, as you find it here in evidence before you to-day?

[This bid is presented by Charles Fisher. The contract is accepted by council, and then Fisher proceeds and does the work according to the contract, if the minutes of council are to be believed.] [9]

It is completed. He presents his bill, and orders are drawn for it for an amount which would imply that the contract must have been that he was to get ninety-five cents a yard for all the work, and not only for the gutter on the north side of Southern avenue. The council employed an engineer to have it measured. *They* employed him, as I understand the testimony. He made the measurements in the presence, as I understood the testimony, of the highway committee, who were the agents of the council, who reported the work to council.

[If this was all done, and the council accepted it and settled upon that basis and issued the orders, and knew, or had the opportunity of knowing, whether those measurements were made as the understanding was, I would say to you that that would be good evidence to show that the contract was as contended for by the plaintiff, provided the council knew, when they did these things, what the real facts in the case were. If they did not know anything about it, they ought, probably, to have inquired. Council should pass no resolutions without knowing, beforehand, what the effect of their resolution was. Their own engineer returns to them a measurement, which is in evidence here—I mean the engineer employed by them. He made these measurements under the direction of the highway committee, a committee appointed by council. This is then brought up in council, and the proceedings of council show that they adopted it, from the fact that they issued orders which covered the exact amount of that measurement.] [10]

[Now, where there is so much doubt and confusion, resulting from the fact of somebody's carelessness, for which the parties directly concerned are probably not to blame, we must resort to the best means of determining wherein the truth lies, and what is just between the parties, and this we can generally best judge when we take the acts of the parties, where it is a continuing matter, from the beginning to the end, and ascertain from them what the real facts in the case are as to this contract. The witnesses may forget. A witness may testify that a contract differed, in one or two particulars, from a certain contract,

and yet may be mistaken, and you have a right to put as against that testimony, the acts of the parties, and from them judge which is likely to be the correct theory—the theory testified to by certain witnesses, or the theory you would have to adopt if you would inspect the acts of the parties, and draw from those acts the inferences which would be honestly left upon the mind of a party to whom they were detailed.   If those measurements were to be made by surface measurement alone, as understood in common parlance, then the theory of the defendant in this case would be correct, viz: that there would not be anything due the plaintiff in this case.   But did councils make a mistake in their actions?   They made no mistake, unless there is some evidence here to satisfy you that they made it when they settled these claims.   A settlement made by parties who are competent to make a settlement should be held sacred, unless there was really a mistake, and, of course, if you find from the evidence that a mistake was made, and that this council was ignorant of what they were doing, or that they were imposed upon by somebody, then you can find out what the true facts are, and allow this plaintiff, or the party suing, only that to which he would be legally entitled.   But if there was no mistake, if the matter is fairly just and there is no mistake which you can find in it, you should adopt that settlement.   To illustrate what I mean, here is one party claims that a certain contract means one thing, and another party claims that the same contract means another thing.   If the parties themselves have settled upon that question and have passed it, courts and juries have no business to open it, provided it was a fair settlement, and no fraud was perpetrated and no honest mistake took place. There is no allegation here that there was any fraud perpetrated by the plaintiff; the only allegation is that there was a mistake made.   Whether there was such a mistake or not, is for you to determine.   Now, if you find from all the evidence in this case that there was no mistake made, that the council have ratified this contract which they made with Charles Fisher, and that in settling for that contract they made no mistake, but settled it on the ground of their liability, as they supposed, or whatever reason they may have had for it; if they made no mistake, and knew what they were about when they made it, then the plaintiff is entitled to recover for these two orders, which, I believe, amount to four hundred dollars.] [11]

Otherwise he is not entitled to recover anything, because if there was a mistake made in this matter, the difference is more, I think, than the $400. But I do not see any reason if he recovers the $400, why he should not also recover the $27.00 for the teaming. It is, however, for you to say how much of this he should recover.

[If you find any mistake in this matter, whatever that mistake is, it would have to be deducted from his claim, but if there is not, he is entitled to recover the whole amount, and that would be with interest from the time the payments should have been made.] [12]

While these orders which have been put in evidence here are not, properly speaking, worth much, or could not be sued upon, yet they probably show prima facie that they were issued for amounts that were due, and that the claim was due at the time the orders were issued, if the claim was right; and that, therefore, interest should be allowed from that time—if you find the claim to be right.

Certain points have been presented which we will proceed to answer.

Counsel for plaintiff respectfully ask the court to charge the jury as follows :

1. If the jury believe that Charles Fisher had a contract with the borough council of South Williamsport, for the paving and curbing of gutters to be done in the borough during the year 1893, at ninety-five cents per yard, and that he did the work claimed to have been done in this action, then he is entitled to recover.

Per Curiam : If you find the facts to be as stated in this point, he is entitled to recover whatever balance you find due, if you find any. [14]

2. If the jury find from the evidence that the borough in any way accepted the work of Charles Fisher, as is alleged to have been done, then such an acceptance will bind the borough, even though there was no legal contract entered into before said work was commenced.

Per Curiam : That would be true, but while I say that would be true, it would not necessarily bind them to any particular amount, because if there was no contract then the work would have to be paid for on the basis of what it is worth, although

they might afterwards contract and include that all in their contract, and if they did that, then there would be a contract and it would date back to the beginning of the work. [15]

3. The motions made by William Bastian, on December 5, 1893, as shown by the minutes, viz : " that the paving on Southern avenue and Junction street done by Charles Fisher, be paid as per agreement or contract," and " that Charles Fisher give bond for twice the paving on Main street, and guarantee the work for two years, and if the borough solicitor approve of bond, the said Charles Fisher be paid ninety-five cents, the same as the other gutters ; " and the motion of December 20, 1893, as shown by said minutes, " that the borough solicitor, H. W. Whitehead, had approved the bond of Charles Fisher for the paving of Main street ; " and motion of George Luppert at same meeting " that the bond of Charles Fisher be accepted and orders drawn for the amount," are evidence from which the jury can infer an acceptance of said work.

Per Curiam : We affirm this point. [16]

4. The fact that orders have been drawn for the full amount of said paving, that some of them have been paid by said borough, together with interest on others, is evidence from which the jury can infer an acceptance of said work and ratification of said work.

Per Curiam : That alone would not be sufficient unless you would find that at the time they drew those orders they were conversant, with the subject-matter, that is conversant with what the contract was, or the alleged contract was.   In other words, before a party can ratify they must be acquainted with all the facts that they propose to ratify.   If an unauthorized act is done for me, and I know what that unauthorized act is, I can ratify it and make it my own, and so in this case. [17]

5. If the jury find that the orders issued by the borough of South Williamsport to Charles Fisher, as alleged in this case, were for a continuous contract, then the payment of any part of said orders or interest on any of them would be an acceptance or ratification of the entire contract.

Per Curiam : We cannot affirm this point, just as this point reads, because if they had been ignorant of the true facts in the case it would not amount to a ratification ; but we say to you in answer to this point, that it tends to show a ratification of the entire contract. [18]

6. If the jury find from the testimony that the borough auditors for the years 1894 and 1895, in arriving at the assets and liabilities of the said borough, included the Fisher orders issued on account of said work, among the liabilities of the said borough, and that the said auditors' reports were not appealed from, but that they were accepted by the borough council and spread upon the minutes, it is evidence from which the jury have the right to infer an acceptance of said work and ratification of the contract.

Per Curiam: We will not so instruct you as to that point, because the auditors, it seems, only entered these as liabilities because they found these orders there, and I do not think that the borough itself ought to be bound by the acts of the auditors in that respect.

Counsel for the defendant request the court to charge the jury as follows:

1. That under all the evidence, the verdict of the jury must be for the defendant.

Per Curiam: We decline to so instruct you.

If you do not find for the plaintiff here, your verdict would have to be just for the defendant generally. Under the pleadings, we could not allow judgment for any specified amount for the defendant.

And now, to wit, January 22, 1896, constable sworn and jury retire.

And, now, to wit, Wednesday, January 22, 1896, before verdict, counsel for defendant except to the charge of the court and answers to plaintiff's and defendant's points, and bill sealed.

*Errors assigned* were (1) in admitting plaintiff's offer and overruling the defendant's objection thereto, which offer and objection is as follows, to wit:

By M. Ritter:

Counsel for plaintiff proposes to prove by the witness on the stand that he was secretary, or clerk, of the borough council of the borough of South Williamsport, in the year 1893, and that he kept the minutes of the council. We propose to show his manner of keeping them. We propose to show, further, that, as secretary of council, he neglected to place certain matters upon the minutes which are regular proceedings of council.

Also, as to who composed the highway committee, and the members of that body for the year 1893; his term of office; his possession or control of the books, and subsequently turning them over to his successor; that in the spring of 1893, council, by resolution, authorized the highway committee to act and hire the lowest responsible bidder for the paving, etc., to be done on Southern avenue; that in pursuance of that resolution bids were advertised for and received; that a contract was drawn up by the witness in pursuance of instructions given him by the highway committee; that said contract was signed by the highway committee and Charles Fisher, and was submitted to council and approved by them, and that there was only one copy of the said contract, and that was in possession of the borough; that Charles Fisher did not have a copy, and that the said contract is now lost. Also, to prove the contents of said contract, and also subsequent motions and resolutions made by members of the borough council in pursuance of that contract, accepting the work done under the contract on Southern avenue and Junction street, and all other work done in the year 1893; that these resolutions and motions accepted the said work, and that orders were directed to be drawn by the borough council, as appears upon the minutes, for the paving done upon Southern avenue, Main street and Junction street, and in pursuance thereof that orders were duly issued for the full amount of the work and paving done by Charles Fisher on these various streets.

This for the purpose of showing that a contract existed between Charles Fisher and the borough of South Williamsport, for all the paving done that year, and also for the purpose of showing a ratification by counsel of said contract and an acceptance by them of said work on behalf of the borough.

Defendant's counsel object to so much of the offer as proposes to supply the minutes of the borough clerk and the actions of the borough council.

1. Because parol evidence is not admissible for that purpose.

2. Because that action of council cannot be proved by parol, because the act of assembly requires borough clerks to keep full minutes of all the proceedings of council.

3. Object to so much of the offer as proposes to show that the contract made was in excess of the powers committed to

the highway committee by virtue of the action of the borough council of the borough of South Williamsport.

4. Because a portion, at least, of the offer is incompetent, irrelevant and immaterial.

By the Court: The objections are overruled, the evidence admitted.

(2) Overruling defendant's objection and in permitting plaintiff to ask a witness on the stand the following question: Q. What about the grading? A. The grading before had been done by the borough, and Mr. Fisher was to do the grading for ninety-five cents.

(3, 4) Overruling defendant's objections and permitting the plaintiff to ask a witness on the stand the following question:

Q. Will you please turn to the minute book of the borough under date of December 4, 1893, and read what reference is there made to the payment of interest on orders No. 542 and 551?

(5) Permitting under objection by defendant the following questions: " Q. State whether the minute book contains a copy of the auditor's report for 1894 and 1895. A. It does. Q. Read from the minutes what is there said concerning the receipt of these reports by the borough councils?

(6) The court erred in sustaining the plaintiff's objection to defendant's offer of evidence, which offer of evidence and objection thereto, and the ruling of the court thereon, are as follows, to wit:

James McGraw called and sworn on behalf of the defendant.

By Mr. Ritter: We request counsel to state what they propose to prove by this witness.

By Mr. Whitehead: Counsel for defendant proposes to prove by the witness on the stand, that he was chairman of the highway committee during the year 1894; that as such chairman he forbade the plaintiff, Charles Fisher, from removing the dirt in front of the hotel of Ritter & Heileman, for which they claim pay to the amount of $27.00 and some cents. This is to be followed by the evidence of the other member of the committee that he never authorized the plaintiff in this case to do that work.

This for the purpose of defeating the plaintiff's right to recover upon this order of $27.00 and some cents.

By Mr. Ritter: We object to that offer because it is already in evidence that one member, at least, of the highway committee, directed this work should be done.

2. That the minutes of the council show that the bill was presented, and that the borough council accepted the bill and ordered the same to be paid.

3. Because incompetent, irrelevant and immaterial.

(7–12) Error in special portions of charge, reciting said portions.

(13) The charge in general as inadequately presenting the case to the jury and manifestly misleading.

(14–18) Answers to plaintiff's first, second, third, fourth and fifth points, reciting said points and answers.

(19) Refusal of binding instructions for defendants.

*H. W. Whitehead,* and *H. T. Ames* of *Ames & Hammond,* for appellant.—As to whether parol evidence is admissible to supply or contradict the record of the borough council, cited sec. 8, act of April 3, 1851, P. L. 324.   The rule of law applicable to this case is correctly stated in the Am. & Eng. Ency. of Law, vol. 20, page 510, in cases there cited.   See also Sawyer v. R. R. Co., 62 N. H. 136, and note thereto in 13 American State Reports, 541.   The orders upon which interest were paid are not evidence, as they may have been issued for work done about which there was no controversy.   As to finality of measurement by city Engineer see Drhew v. Altoona, 121 Pa. 401.   The basis of this contract having been proved by plaintiff in writing, and the facts and circumstances attending its execution and delivery being wholly undisputed, the interpretation thereof was for the court and not for the jury: Shafer v. Senseman, 125 Pa. 310; Duffield v. Hue, 129 Pa. 94.   If there was any mistake in the measurement it can upon discovery be rectified: Horton v. Harbridge, 127 Pa. 11; Drhew v. Altoona, 121 Pa. 401.   It was the duty of the court so to present the case as to direct the attention of the jury to the true points of inquiry and not to prejudice either party: Youngman v. Miller, 98 Pa. 196; Burke v. Maxwell, 81 Pa. 139; Parker v. Donaldson, 6 W. & S. 132.   If the language of the court taken in connection with the circumstances of the case may have misled the jury as to the law, or if the tendency of the charge

was to mislead, it is ground for reversal: Bisbing v. Bank, 93
Pa. 79 ; Railroad Co. v. Berry, 68 Pa. 272 ; Stall v. Meek, 70
Pa. 181 ; Tietz v. Traction Co., 169 Pa. 516 ; Herstine v. R. R.,
151 Pa. 244.   The rule of law by which a charge is to be tested
for inadequacy is stated with great clearness in Reichenbach v.
Ruddach, 127 Pa. 564.   Ratification presupposes knowledge
of the act intended to be ratified : Zoebisch v. Rauch, 133 Pa.
532.   See also Borough v. Water Co., 124 Pa. 610 ; Horton v.
Harbridge, 127 Pa. 11.   As to the question of mistake of fact,
cited Meredith v. Haines, 14 W. N. C. 364 ; Kelly v. Solari, 9
M. & W. 54 ; Harris v. Hay, 111 Pa. 562.   The court erred in
affirming plaintiff's third point, as it was not reasonably con-
sistent with the evidence : Furniture Co. v. School District,
130 Pa. 76.


*W. E. Ritter* and *James B. Krause*, for appellee.—The princi-
ple contended for by the plaintiff in endeavoring to supply an
omission from the minutes of the municipality when the pro-
ceedings actually occurred, is concisely ruled in a large number
of cases : Dillon on Municipal Corporations, vol. 1, page 377.
See also Bohan v. Borough, 154 Pa. 404 ; Gearhart v. Dixon,
1 Pa. 224 ; Furniture Co. v. School District, 158 Pa. 42 ; Ro-
land v. School District, 161 Pa. 102 ; Building Assn. v. Gold-
beck, 13 W. N. C. 24 ; Dunlap v. Water Co., 151 Pa. 477.   A
municipal body has power to ratify a contract previously made :
Am. & Eng. Ency. of Law, vol. 15, page 1102.   See also Mc-
Knight v. Pittsburg, 91 Pa. 273 ; Silsby Mfg. Co. v. Allen-
town, 153 Pa. 319 ; McCormick's Appeal, 165 Pa. 386.   As to
the charge of the court the judge is entitled to considerable
latitude and discretion in commenting on evidence ; unless he
is unfair and misleading the Supreme Court will not interfere :
Com. v. Doughty, 139 Pa. 387 ; Rogers v. Davidson, 142 Pa.
436 ; Railroad Co. v. Coon, 111 Pa. 430 ; Reese v. Reese, 90
Pa. 89 ; Grantz v. Price, 130 Pa. 415.   If no charge was re-
quested on particular testimony, a failure to charge will not be
considered an error : Railroad Co. v. Brandtmaier, 113 Pa. 610.
It is the province of the jury to reconcile, if possible, apparent
contradictions of witnesses : Fullam v. Rose, 160 Pa. 55.   If
the terms of a contract be in dispute, its construction is for the
jury : Wilson v. Lyle, 23 W. N. C. 309.   A presumption arises

400    FISHER *v.* SOUTH WILLIAMSPORT, Appellant.

Arguments—Opinion of the Court.     [1 Super. Ct.

on the settlement: Gheen v. Heyburn, 1 Walk. 148. The appellant has no standing in this court, the only remedy was to ask the court below to set the verdict aside: Gates v. Watt, 127 Pa. 27.

OPINION BY WILLARD, J., March 18, 1896:

The appellee brought his action in the court below against the borough of South Williamsport, and set forth in his statement of claim his right to recover the sum of $400, by virtue of a contract in writing between himself and the authorities of the borough of South Williamsport, and twenty-eight dollars and twelve cents ($28.12) for extra work. Unfortunately the contract declared upon, as well as many of the resolutions of the council, connected therewith, appear to have been lost or stolen (the resolution never having been recorded) while in the possession of the clerk of the borough, who occupied the double position of borough clerk and borough treasurer. The explanation made by this officer of the loss of these papers may have appeared to the court below entirely satisfactory, but on a careful review of the record we think the practice indulged in by the authorities of the borough in intrusting the important papers involved in this case to a party too closely identified with the appellee was at least reprehensible, and in our opinion calls for the closest scrutiny of every transaction connected with this contract. As to the number of streets to which this contract applied, there was sufficient uncertainty to warrant the court in submitting that question to the jury, and in view of the contradictory testimony, the vague and uncertain character of the bid submitted, it was proper also to submit the question of price for the consideration of the jury. But in submitting these questions the court coupled them with another question involved in the controversy, concerning which there was not a shadow of doubt. When in the course of the trial it became necessary to ascertain what the real contract was, the person who drew the same under the direction of the highway committee testified, viz:

Q. Over what form did you draw that contract? A. I drew it over a form that Mr. Whitehead had drawn before for the paving of Southern avenue.

(Contract dated October 1, 1892, between the borough of

South Williamsport and Charles Fisher, marked Plaintiffs' Exhibit 1, shown witness.)

Q. Is this the contract you have referred to as drawn by Mr. Whitehead and over which you drew the contract of 1893 with Charles Fisher? . A. Yes, sir. This is the one. Q. Was the contract which you drew exactly like this contract? A. No, sir. Q. State in what it differed? A. It differed in this, it was for the paving to be done on Southern avenue, and the paving in 1893, and it was to be 95c. a yard.

Again the same witness testified on cross-examination: "I drew it for the highway committee over this copy of Mr. Whitehead's according to their instruction, and that was that I should copy right after this that I have in my hand here. I don't know whether I drew it over that resolution or not, but I know I drew it over this, and what this contains that contains, with a couple of insertions."

William Bastian, another witness, testified, viz: Q. Tell what the contract was? A. The contract was just the same as the one Mr. Whitehead had drawn up for the other side of the street, with the exception we were to pay him 95c. instead of 75c. from Curtin street to Culvert at the coal office on Southern avenue, the North side.

The contract of October 31, 1892, provided, among other things, viz: "Measurement to be surface measure after the work is finished and completed, and to include curbing, paving, stoning bottom of gutter, etc. The measuring to be done by H. C. Reeder, engineer, and payments to be made on said engineer's measurements."

The undisputed testimony of every witness sworn and every paper put in evidence left no question as to how the measurement was to be made. This contract was read to the council of the borough of South Williamsport in the presence of Fisher, the appellee, and as it was alleged, approved by the action of the borough council. There was no uncertainty as to the manner of measurement of the work performed by Mr. Fisher, and there is not a particle of testimony disclosed in this record by which that understanding and solemn agreement was ever changed, or varied one iota. Upon this contract the appellee brought his action, and obtained a verdict for the full amount of his claim, when according to the testimony orders had been issued

to him for six hundred and twenty-five yards at 95c. per yard, amounting to $593.75 in excess of what he was entitled to under the terms of his contract. The testimony of Mr. H. C. Reeder upon this subject is as follows, viz:

"I had instructions to measure the cobble paving, surface measurement, and the curbing measured as eighteen inches in depth, and we figured as so much pavement at that width."

Q. What would have been the difference between the measurements as you made them there and if you would have measured the whole thing at surface measure? A. It would have made a difference, I should judge, of about twenty per cent. Q. What would have been the total difference? A. Seven hundred and seventeen yards. Q. That is, according to your measurements, Mr. Fisher has received credit for seven hundred and seventeen yards more than he would have received if the measurements had been taken at surface measure? A. Well—it would have been a little less than that—the top surface of the dirt— Q. Well, that is about it? A. Well, I suppose may be six hundred and twenty-five yards. Q. Six hundred and twenty-five yards more? A. The curb measured about three inches in thickness. On redirect examination the witness further testified, viz: Q. Who gave you instructions as to this measurement and how you were to measure this? A. The highway committee, they were with me. Q. Did you have the contract there between Fisher and the borough? A. No. They told me that was the understanding between them and Fisher. Q. That was the contract between them and Fisher? A. Yes, sir.

By Mr. Whitehead: No, he didn't say that that was the contract.

By Mr. Ritter: Well, what was it? A. The understanding; because the curbing extended into the ground, and they were to allow him eighteen inches in depth. That is, for every running foot of gutter one and one-half square feet of paving, which would amount to about sixteen cents a foot for the curbing at a price of ninety-five cents a yard. Q. You made the measurement according to the instructions of the highway committee? A. Yes, sir.

This contract, it must be borne in mind, was made between the borough council of South Williamsport and Charles Fisher, by virtue of a resolution of the council. There was no power

in the engineer or the highway committee to change or modify that contract. It could only be so changed and modified by another resolution or ordinance of the council which it is not pretended was ever passed. The action of the committee in directing a measurement by the engineer different from the mode prescribed in the contract was unauthorized, and if it reduced the price of the contract, it was detrimental to Charles Fisher, while if it raised the price of the contract, it was to the prejudice of the borough and every taxpayer thereof, and as the evidence shows this unauthorized act was to the detriment of the borough of South Williamsport in the sum of at least five hundred and ninety-three dollars and seventy-five cents ($593.75), the jury should have been so instructed. They were not so instructed, but were allowed to render a verdict for the full amount of the plaintiff's claim under the undisputed testimony that orders had been issued to him by the borough officers in excess of the amount to which he was honestly entitled under the express terms of his contract, which excess amounted to $593.75. The fact that the city engineer measured the work under the direction of the highway committee does not change the law governing this case. It is true Fisher was to be paid on the measurement of the city engineer, but the contract specified how he was to make the measurement, and Fisher knew it. "This estimate of the engineer was conclusive only on the condition that it was made in accordance with the terms of the contract, and it was not in his power to change the contract so as to allow either a greater or a less rate of compensation than was plainly agreed upon:" Drhew v. Altoona, 121 Pa. 401.

Nor does the fact that the borough officers issued orders to Fisher to the amount of the measurement made by the engineer change the rights of the parties. This action is upon a contract, and upon the terms of that contract this case rests and should have been disposed of as above indicated. When in the court below it was attempted to prove some other mode of measurement than that provided in the written contract, the court excluded the evidence with the following pertinent remarks: "It is either in that contract or it is not. We have to construe it according to that contract. You have proven your contract. If this is settled in that contract, this evidence is wholly immaterial; if it is not settled in that contract it is not evidence,

because that contract is what we have got to go by. You have shown the terms of it. You have proven it partly in writing, because you have put in evidence another contract, and the evidence is that with the exception of two changes, and the changes are pointed out, the contract with Fisher is precisely like it; and you have also put in evidence the bid as part of the contract, and you cannot go all over the ground again with 'understandings.' That won't do."

Had the court adhered to this ruling and not coupled this certainty as to the measurement with the uncertain questions of price and the number of streets, many of the assignments of error could not be sustained. But as the case was submitted the 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th and 19th assignments of error are sustained. We think, however, the case should be sent back to the court below for another trial. It is now well settled in Pennsylvania, that where an ordinance or resolution is actually passed by the legislative branch of a municipal corporation, and through inadvertence or mistake such resolution or ordinance is not recorded upon the minutes, the fact of the passage of such resolution or ordinance may be proved by the testimony of those present at the meeting: Bohan v. Avoca Borough, 154 Pa. 404; Gearhart v. Dixon, 1 Pa. 224; School District v. McBride, 22 Pa. 215; Furniture Company v. School District, 158 Pa. 35; Roland v. School District, 161 Pa. 102; Harmony Building Asso. v. Goldbeck, 13 W. N. C. 24.

The first assignment of error is therefore overruled.

As the error complained of in the second assignment pertained to the admission of testimony as to the price per yard, the evidence was properly admitted and the assignment is overruled.

What possible bearing upon the issue the payment of interest upon the orders issued by the borough officers to Charles Fisher may have had we cannot understand, and the evidence on that question should have been promptly rejected. The third and fourth assignments of error are sustained.

The fifth assignment of error is also sustained for the reason that the action of the auditors of the borough or their report had no possible bearing upon the questions involved. The testimony was irrelevant and improperly admitted.

We think the testimony of James McGraw on the question of extra work should have been admitted, and the court erred in excluding the same; the sixth assignment of error is therefore sustained.

The judgment is reversed and a venire facias de novo awarded.